[Cite as *Progressive Equity Invests., L.L.C. v. Painesville Twp. Bd. of Trustees*, 2023-Ohio-180.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| PROGRESSIVE EQUITY INVESTMENTS, LLC, | CASE NO. 2022-L-016 |
| Appellant, | Administrative Appeal from the Court of Common Pleas |
| - vs - | |
| PAINESVILLE TOWNSHIP TRUSTEES, et al., | Trial Court No. 2021 CV 000684 |
| Appellees. | |

# O P I N I O N

Decided: January 23, 2023
Judgment: Affirmed

*Erik L. Walter,* Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, OH 44077 (For Appellant).

*Jeremy D. Iosue* and *Brian C. Lee,* Stefanik Iosue & Associates, LLC, 1109 Carnegie Avenue, 2nd Floor, Cleveland, OH 44115 (For Appellees).

FREDERICK D. NELSON, J., Ret., Tenth Appellate District, sitting by assignment.

{¶1} Plaintiff-Appellant Progressive Equity Investments, LLC ("Progressive") attempted a direct "administrative appeal" to the common pleas court "pursuant to Ohio Revised Code 2506.01" from a vote by the Painesville Township Board of Trustees (together with co-Defendant-Appellee Township, "the Trustees") declining to declare by resolution that Progressive's proposed use of its property would be "similar to * * * uses already permitted" in the relevant Township zoning district. *See* February 2, 2022 Order

Granting Summary Judgment; Progressive's June 8, 2021 Notice of Administrative Appeal; *compare* Township Zoning Resolution Section 12.05(W) (formerly 12.05(U), regarding "[s]imilar uses").  The trial court found that Progressive should have appealed the Trustee's vote first to the Township Board of Zoning Appeals ("BZA"), and that in not letting the administrative process play out, Progressive had failed to exhaust its administrative remedies.  Progressive disagrees, even while arguing that under the Trustee's petition review process – a process that Progressive nowhere claims was disregarded or was itself in violation of any law, ordinance, or rule – it received no adjudicative hearing "to present any evidence or call witnesses * * *."  Progressive Response Brief at 4.  Examining Progressive's arguments without deference to the trial court's ruling, we affirm the trial court's judgment.

{¶2}    At least for purposes of appeal, Progressive does not take significant issue with the trial court's sketch of the background to this matter.  The trial court noted that Progressive claims ownership of certain land in the Township that it "used in the past as a luxury car dealership.  According to the Township, that use was always subject to a conditional use permit * * *, which expired in August, 2018. * * *  On September 1, 2020, [Progressive] submitted a variance application, and a third party applied for a new [conditional use permit].  For a variety of reasons, those applications were withdrawn two weeks later.  On November 17, 2020, [Progressive] submitted a Petition for Similar Use to the * * * Trustees, requesting they declare that a used car dealership was similar to the uses already permitted in its zoning district.  That petition was unanimously denied during the Trustees' public meeting on May 18, 2021," and Progressive filed what it termed its

2

Case No. 2022-L-016

"Notice of Administrative Appeal" with the common pleas court a few weeks later. Summary Judgment Order at 1-2; June 8, 2021 "Notice of Administrative Appeal."

{¶3} On appropriate notice, the trial court converted a motion by the Trustees to dismiss Progressive's court action into a motion for summary judgment, which the trial court then found "well taken" because Progressive "was required to appeal the Trustees' decision to the BZA, not to the Court of Common Pleas." Summary Judgment Order at 3. The Trustees' vote was not a "final order, adjudication, or decision" from an officer, authority, or board of a political subdivision of the state subject to direct court appeal, *see* R.C. 2506.01(A), the common pleas court held, because appeal of the Trustees' decision is "'granted by rule, ordinance, or statute to a higher administrative authority,'" with a right to a hearing on such an appeal granted through the BZA. Summary Judgment Order at 2-3, quoting R.C. 2506.01(C).

{¶4} "Here," the trial court recited, "R.C. 519.14(A) establishes that a township board of zoning appeals 'may hear and decide appeals where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative official in the enforcement of sections 519.02 to 519.25 of the Revised Code [relating to zoning regulation * * *.'" Summary Judgment Order at 2. Citing *State ex rel. Burger King Corp. v. Oakwood*, 72 Ohio App.3d 157, 594 N.E.2d 116 (8th Dist.1991), the trial court found that the Trustees functioned in this matter as an "administrative official" within the context of the Township zoning resolution that provides for appeal to the BZA "where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of sections 519.02 to 519.25 of the Revised Code, or of any [zoning] resolution adopted pursuant thereto." *Compare* Summary

3

Judgment Order at 2-3 *with* Township Zoning Resolution Section 9.02(A). The trial court therefore granted the Trustees' motion for summary judgment. Summary Judgment Order at 3.

{¶5} Progressive lodges a single assignment of error: "The trial court's decision to grant Appellee[s'] Motion to Dismiss/Motion for Summary Judgment was in error." Appellant's Brief at 6. We limit our review to the arguments that Progressive advances in support of this proposition. *Zhuravlyov v. Bun*, 11th Dist. Lake No. 2019-L-102, 2020-Ohio-4108, ¶ 33 ("It is not this court's role to advance arguments on behalf of a party"), citing *State ex rel. DeWine v. Deer Lake Mobile Park, Inc.*, 11th Dist. Geauga No. 2016-G-0077, 2017-Ohio-1509, ¶ 27, citing App.R. 16(A)(7) ("[I]t is not this court's function to make appellants' argument for them").

{¶6} We begin by reciting certain provisions from the Zoning Resolution. Section 9.02 sets forth the powers and duties of the BZA. It provides, in relevant part, that the BZA is to:

> A. Hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of sections 519.02 to 519.25 of the Revised Code, or of any resolution adopted pursuant thereto;
>
> B. Authorize, upon appeal, in specific cases, such variance from the terms of the zoning resolution as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done.
>
> C. Grant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution. * * *

4

Case No. 2022-L-016

**{¶7}** Zoning Resolution Section 12.05(W) sets forth the procedures for Trustee consideration of a petition for similar use. It provides:

Similar uses approved by the Township Board of Trustees:

a. The Painesville Township Board of Township Trustees may elect, following consideration of a petition seeking their approval, to declare by Resolution that a specific use as proposed by a specific petitioner is similar to those uses already permitted in the zoning district within which the parcel of property proposed to be used is located.

b. A petition must be submitted in writing and must include a synopsis of the organizational structure of the business entity, including ownership and form of the entity, along with a discussion of all business activities proposed to be conducted on the specified premises. Business activities will include a listing of goods and services to be provided, a delineation between wholesale and/or retail orientation, projected employment statistics, hours of operation, types of equipment and supplies which will be stored and used on the premises both indoor and outdoor, a discussion of the proposed use's impact upon local traffic including on-site circulation and parking, a discussion of access for fire and safety forces and an informal discussion of plans for signage. A site plan indicating the general layout of the site including dimensions and measurements should be provided with the written petition.

c. Any such petitioner is advised to schedule time to attend a work session of the Board of Trustees for the purpose of explaining the petition and to answer questions which may or may not be presented. The written petition must be submitted to the Zoning Office at least 10 days prior to the date of the work session which the petitioner desires to attend.

d. The Township Board of Trustees may elect to propose and vote upon a Resolution consistent with the terms in sub-paragraphs (a), (b), and (c) above at a regularly scheduled meeting of the Board of Trustees. Following an approval or affirmation by Resolution of the petition, an application for Conditional Use Permit shall be filed by the petitioner and an original signed copy of the petition will be included in the application file.

e. A declaration of similar use by Resolution of the Board of Township Trustees shall be valid only for the specific petition presented.

5

f. Similar uses declared by Resolution must ensure that all exterior lighting shall be directed toward the interior of the parcel so as to minimize light emission onto neighboring properties.

g. If not specifically addressed in this Section, all buildings and uses shall conform in all other ways to the requirements of the zoning district in which they are located.

{¶8} We also note that Section 12.03(A) of the Zoning Resolution provides:

In consideration of an application for a Conditional Use Permit, the Board of Zoning Appeals shall be governed by the rules of procedure described in the Ohio Revised Code Chapter 519 and any amendments thereto, which procedures shall apply to applications for Conditional Use Permits as well as to the procedures for applications for zoning appeals.

{¶9} Progressive argues first that the language of Township Zoning Resolution Section 9.02(A) establishing the scope of BZA appeals does not "specifically include[]" appeals to the BZA from a Trustees' similar use vote. Appellant's Brief at 7. Progressive's arguments to this end focus almost exclusively on attempting to distinguish *Burger King* (as cited by the trial court but not addressed to us by the Trustees). But *Burger King* provides the most analogous precedent we can find, and we are not persuaded by the particular arguments Progressive makes against aligning our decision here with the Eighth District's analysis there.

{¶10} In *Burger King*, that company as an adjacent landowner sought to appeal to the local BZA a "decision of the village council * * * granting a similar use permit to a land developer." 72 Ohio App.3d at 158. The BZA turned away the attempted appeal, "stating that it had no jurisdiction to review a decision of council." *Id.* Burger King sought a writ of mandamus to require the BZA to hear its appeal, and the court of appeals found that the BZA had a "clear legal duty" to hear appeal from the council's similar use decision.

6

Case No. 2022-L-016

*Id.* at 159. While the town charter and ordinance did not specifically name the town council as a body from which certain decisions could be appealed to the BZA (as they did name the Building Commissioner, the Building and Zoning Inspector, and the Planning Commission), the charter did direct that the BZA "shall hear and decide * * * appeals from decisions of the officers enforcing zoning regulations or issuing zoning or use permits," and the ordinance provided that the BZA was to "hear and determine appeals * * * from any administrative officer on matters relating to this Zoning Code * * * for relief from any * * * determination, including the refusal, granting, or revocation of permits * * * ." *Id.*

{¶11} The appellate court found that council members there were village "officers" under the terms of the charter, and that "although council is primarily a legislative body, council may act administratively when executing or administering an ordinance already in existence." *Id.* at 159-60, citing *State ex rel. Srovnal v. Linton*, 46 Ohio St.2d 207, 346 N.E.2d 764 (1976). "[W]hen deciding whether to grant similar use permits * * *, the members of council are acting as administrative officers," *Burger King* concluded in granting the writ to compel the BZA to hear appeal of the council's similar use decision. *Id.* at 160.

{¶12} Progressive does not attempt to draw any meaningful distinction between the scope of BZA authority described by the charter and ordinance at play in *Burger King* and the authority of the Township BZA here to consider appeals involving any claimed "error in any order, requirement, decision, or determination made by an administrative official in the enforcement of sections 519.02 to 519.25 of the Revised Code, or of any resolution adopted pursuant thereto." *Compare* Township Zoning Resolution Section 9.02(A). (Neither party, for example, has briefed the meaning of "enforcement" as it

7

relates to the Trustees' approval or disapproval of a similar use petition pursuant to Zoning Resolution Section 12.05(W).  In this regard, we note that the structure of the "conditional use permit" provisions of the Zoning Resolution suggests that a finding of "similar use" compels but is not a necessary precondition for a grant of the conditional use permits that the BZA issues or denies and that can be sought on other grounds.  *See* Zoning Resolution Section XII.)

{¶13}  Rather, Progressive endeavors to distinguish *Burger King* first by arguing that that case involved mandamus, whereas "[h]ere, no such relief is being sought." Appellant's Brief at 7.  This unadorned distinction does not benefit Progressive.  The writ issued in *Burger King* precisely because the court determined that the BZA there was required to hear appeals from similar use determinations by the village council.  Similarly, the issue here is whether the Painesville Township BZA has authority (under R.C. 519.14(A) and Township Zoning Resolution Section 9.02(A), as the trial court found, *see* Summary Judgment Order at 2) to hear and decide the Trustees' rejection of Progressive's similar use petition.  That *Burger King* was decided under the heightened standards applicable to mandamus cases only enhances the potential salience of that outcome as considered here.

{¶14}  Second, Progressive argues that "nowhere in ORC 505.01 *et seq.* are the Painesville Township Trustees designated as 'administrative officials.'  Rather, they are elected officials.  ORC 505.01.  Accordingly," unlike the council members in *Burger King*, they cannot be deemed "a designated body from which an appeal to the zoning board of appeals may lie."  Appellant's Brief at 7-8; *see also* Appellant's Reply at 1-2 (Trustees not administrative officials; "[r]ather, they are elected officials * * *.").  This argument – that

8

Case No. 2022-L-016

because the Trustees are elected officials, they cannot function in an administrative capacity – again does not distinguish *Burger King*: that decision acknowledged the village council there as "primarily a legislative body," albeit one charged with certain administrative determinations pursuant to existing legislation. 72 Ohio App.3d at 159-60. In that context, the appellate court held that the village council's similar use determination was appealable to the BZA.

{¶15} Progressive's suggestion that elected officials cannot function in any administrative capacity for purposes of BZA review is further undercut by *Kasper v. Coury*, 51 Ohio St.3d 185, 555 N.E.2d 310 (1990). There, on the way to holding that neither a township board of trustees nor a township zoning inspector could take an administrative appeal to common pleas court from a BZA determination, the Supreme Court of Ohio observed:

> The board of zoning appeals is a creature of the township trustees. For the most part, the board of zoning appeals is created to provide a property owner with an administrative review. Oftentimes, the review involves a property owner who either requests a variance from the terms of a zoning resolution or seeks review from a decision of an administrative official. To allow administrative officials the right to attack * * * the decision which the officials had empowered the board of zoning appeals to make on their behalf, would defeat the [review] purpose for which the board of zoning appeals was created.

*Id.* at 188. *Kaspar*'s inexorable implication is that a board of township trustees, although composed of elected officials, can at least in certain circumstances function as an administrative body for purposes of BZA review.

{¶16} Indeed, Progressive itself appears to concede the point in the very next paragraph of its briefing. Apparently addressing the scope of direct appeal as authorized

9

Case No. 2022-L-016

by R.C. 2506.01(A) (at least without regard to R.C. 2506.01(C)), Progressive underscores that "**if the action executes or administers an existing law, the action is administrative and appealable**." Appellant's Brief at 8 (emphasis in original), citing *Gross Builders v. Tallmadge*, 9th Dist. Summit No. 22484, 2005-Ohio-4268, ¶13; *Donnelly v. Fairview Park*, 13 Ohio St.2d 1, 233 N.E.2d 500 (1968), paragraph two of the syllabus. "Here," argues Progressive, "* * * the actions being appealed were not legislative." Appellant's Brief at 9; *see also id.* at 8 (apparently referring to the Trustees in noting that "functions of an administrative body can be quasi-judicial" under certain circumstances). Progressive thus seems to retreat from its argument that because the Trustees are elected, they cannot function as administrative officials.

{¶17} "Finally" in attempting to distinguish *Burger King* as "not applicable," Progressive submits that the BZA cannot review a Trustee decision "because the Painesville Township Trustees sit as a superior tribunal of review for decisions of the zoning board of appeals. ORC 5501 *et seq.*" Appellant's Brief at 8; Reply Brief at 2. We surmise that Progressive's citation for this proposition may be intended to be to R.C. 505.01, but we confess that we cannot glean what specific statutory text Progressive means to highlight here, or what its application would be to BZA authority under R.C. 519.14(A) as flagged by the trial court.

{¶18} We also note that we understand this argument to be somewhat related to Progressive's contention that "even if it had to exhaust its remedies – something Appellant vehemently denies – it would have been futile" to do so. *See* Appellant's Brief at 9; Reply Brief at 3. But this is not a case like *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 526 N.E.2d 1350 (1988), *compare* Appellant's Brief at 9. Progressive does not assert that

10

either the zoning resolution itself or its ultimate application (as simply hypothesized, we emphasize, in the context of a potential application for a conditional use permit) violates constitutionally protected property rights; rather, Progressive seeks not any sort of declaratory judgment, or other remedy apart from what it denominates an "administrative appeal" of the similar use finding.

{¶19} And *Kaspar* illustrates that the fact that "[t]he board of zoning appeals is a creature of the township trustees" does not strip it of authority to review positions taken by its creator. 51 Ohio St.3d at 188. *Kaspar* instead elucidates that the Trustees would be debarred from appealing to the common pleas court from a review decision they have empowered the BZA to make: while Progressive could appeal such a BZA determination to court pursuant to R.C. 2506.01, on the basis of the administrative record as it then would exist, the Trustees could not. *Id.* at paragraph one of the syllabus.

{¶20} Progressive's limited attempts to distinguish *Burger King* fail, and Progressive provides us with no further argument as to why appeal to the BZA from the the Trustees' similar use decision was not available.

{¶21} The entire balance of Progressive's briefing is devoted to contesting what we construe as an independent, alternative argument by the Trustees: that even if appeal of its similar use decision did not lie with the BZA, that decision did not come as a "quasi-judicial" determination susceptible of direct appeal to common pleas court. *Compare* Appellant's Brief at 8-13 and Reply at 2-6, *with* Appellee's Brief at 5-8 (summarizing at 8 that Zoning Resolution "Section 12.05(W) does not [provide for] a quasi-judicial proceeding as contemplated by the Supreme Court of Ohio [as a prerequisite to direct appeal under R.C. 2506.01(A)], as there is no provision for hearing or the introduction of

11

evidence"). The trial court did not rely on this second prong of the Trustees' argument; it granted summary judgment because it concluded that appeal of the Trustees' similar use determination could lie to the BZA, where a hearing would be provided, thus making the Trustees' decision not final under R.C. 2506.01(C). Summary Judgment Order at 2-3 (also citing R.C. 519.14(A) and Zoning Resolution Section 9.02(A)).

{¶22} As discussed above and as the trial court emphasized, a decision by an authority of a political subdivision is not directly appealable to common pleas court pursuant to R.C. 2506.01 unless it is a "final" decision not reviewable upon hearing by a higher administrative authority. R.C. 2506.01(A), (C). But even then, "R.C. 2506.01 provides for appeals only from quasi-judicial proceedings, which require notice, hearing, and the opportunity for introduction of evidence." *State ex rel. Painesville v. Lake Cty. Bd. of Commrs.*, 93 Ohio St.3d 566, 571, 757 N.E.2d 347 (2001) (citation omitted).

{¶23} Because we do not find Progressive's arguments to us persuasive as they apply to the administrative finality of the Trustees' decision in light of R.C. 2506.01(C), we decline to engage in extensive dicta regarding whether the Trustees' decision was quasi-judicial. Under appropriate circumstances, we might have been open to considering an argument that Progressive's opportunity to file its petition with the Trustees, including supporting materials, did constitute an opportunity to provide evidence, that the zoning resolution's promise of an opportunity for Progressive to appear at a Trustee "work session * * * for the purpose of explaining the petition and to answer questions which may or may not be presented" did constitute the right to a hearing, and that the zoning resolution's enumeration of certain types of information required of a petitioner (including traffic and safety impacts) provided some guidance to the Trustees' as to factors that

12

might inform their decision. *Compare* Zoning Resolution Section 12.05(W); *Downie v. Lake Metro. Hous. Auth.,* 11th Dist. Lake No. 2014-L-060, 2015-Ohio-811, ¶ 18 (quoting *Hennosy v. Cty. Civ. Serv. Comm.*, 10th Dist. Franklin No. 10AP-417, 2010-Ohio-5971, ¶ 13: "[i]n determining whether an agency proceeding is quasi-judicial, the court must focus on whether the statute or rule governing the proceeding required notice and a hearing, not whether notice and a hearing were provided"). In any event, Progressive does not make such an argument, and suggests rather the opposite.

{¶24} Progressive tells us, over and over, that it "was never given a hearing to present [similar use] evidence." Appellant's Brief at 11; *see also id.* ("<u>never afforded a hearing</u>") (emphasis in original), *id.* at 3 ("never offered a hearing at which witnesses would be sworn in and evidence/witnesses presented in support of the Petition'"), *id.* at 4 ("no allowance for sworn witnesses or evidence"), Reply at 3 ("<u>never afforded a hearing</u>") (emphasis in original), 4 ("never given a hearing to present [similar use] evidence"), *id.* at 6 (citing Trustees' motion in reciting that Progressive "'was not afforded the opportunity to examine witnesses and any testimony given was not under oath'"). That is why, Progressive says, "no review of the [administrative] record is possible as no record was ever established." Appellant's Brief at 11.

{¶25} Progressive never argues or explains why the provisions of zoning resolution Section 12.05(W) provide for sufficient "notice, hearing, and * * * opportunity for the introduction of evidence" to mark the Trustees' decision as quasi-judicial. *Compare Painesville*, 93 Ohio St.3d at 571. And even after being challenged by the Trustees to do so, Progressive never points to any right to such notice, hearing, and opportunity to introduce evidence, either under Zoning Resolution Section 12.05(W) or

13

elsewhere, that it contends was violated. *Compare* Reply Brief *with* Appellee's Brief at 6 (Progressive "does not cite any authority that required the Trustees to hold any such hearing and receive evidence").

{¶26} Reviewing this matter de novo, we do not find merit in any of the particular arguments advanced by Progressive. We overrule Progressive's lone assignment of error and affirm the judgment of the Lake County Common Pleas Court.

JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.

14

Case No. 2022-L-016